UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

JASON ASTBURY,

        Plaintiff,

v.

THE CITY OF TRENTON,
A Municipal Corporation of the State of
New Jersey,

        Defendant.

Civil Action No. 15-07673-BRM-TJB

OPINION

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is the City of Trenton's ("Defendant" or "Trenton") Motion for Judgment on the Pleadings, pursuant to Federal Rule of Civil Procedure 12(c), or in the alternative for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56 (ECF No. 39) and Jason Astbury's ("Astbury" or "Plaintiff") Motion for Partial Summary Judgment (ECF No. 41). Astbury opposed Trenton's Motion for Summary Judgment (ECF No. 47) and Trenton opposed Astbury's Motion for Partial Summary Judgment (ECF No. 44). Having reviewed the submissions filed in connection with the motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause shown, Trenton's Motion for Summary Judgment is **GRANTED** and Astbury's Motion for Partial Summary Judgment is **DENIED**.

**I.    PROCEDURAL HISTORY**

On September 5, 2015, Astbury filed a Complaint (the "Complaint") in the Superior Court of New Jersey, Law Division, Mercer County against Trenton alleging a violation of his

1

statutory and constitutional due process rights pursuant to the New Jersey State Constitution and United States Constitution. (ECF No. 1-1.) On October 23, 2015, Trenton removed the Complaint from the Superior Court of New Jersey to the United States District Court, District of New Jersey. (ECF No. 1.)

On May 25, 2018, Trenton filed a Motion for Judgment on the Pleadings, pursuant to Federal Rule of Civil Procedure 12(c), or in the alternative, for Summary Judgment (ECF No. 39), and Astbury filed a Motion for Partial Summary Judgment on the issue of liability pursuant to Federal Rule of Civil Procedure 56(a) (ECF No. 41). On June 12, 2018, Trenton filed an Opposition to Astbury's Motion for Partial Summary Judgment. (ECF No. 44.) On June 14, 2018, Astbury filed an Opposition to Trenton's Motion for Summary Judgment. (ECF No. 47.)

**II.  FACTUAL BACKGROUND**

Astbury has been employed as a law enforcement officer with the City of Trenton Police Department since April 2000 (ECF No. 1-1 ¶ 1) and is currently a Detective Sergeant. (Astbury Dep. (ECF No. 41-2 Ex. A) 7:11-8:10).

In October 2013, Astbury was engaged in a romantic relationship with Jamie Schiaretti, the wife of his police partner, Michael Schiaretti III ("Officer Schiaretti"). (ECF No. 41-2, Ex. A, 28:6-34:2.) On October 9, 2013, Astbury contacted Detective James A. Taliaferro ("Detective Taliaferro") requesting to meet "because he wanted to discus[s] a problem he was having." (TPD IA Memo (ECF No. 39-9) at 2.) Astbury informed Detective Taliaferro that Jamie Schiaretti had contacted him and informed him that Officer Schiaretti had threatened to hurt Asbury and to hurt himself. (*Id.*) Astbury further stated that he ended his relationship with Jamie Schiaretti and mentioned that "she has called [Astbury] on several occasions and advised that [Officer] Schiaretti has become abusive towards her." (*Id.*) Astbury also raised concerns about Officer

2

Schiaretti harassing him and tarnishing his reputation among the Trenton Police Department. (*Id.*)

Following his meeting with Astbury, Detective Taliaferro advised Lieutenant James Slack ("Lieutenant Slack") of the allegations made by Astbury. (*Id.* at 3.) Thereafter, Lieutenant Slack advised Officer Schiaretti that he would be placed on restricted duty until he was cleared to return to full duty, but that there were no departmental charges pending against him. (*Id.*) Officer Schiaretti was then relieved of his department issued weapon. (*Id.*)

On October 17, 2013, Officer Schiaretti reported to The Institute for Forensic Psychology in Oakland, New Jersey to submit to a fitness for duty examination. (*Id.* at 4.) Officer Schiaretti was examined by Dr. Lewis Z. Schlosser and found to be fit for duty with no restrictions. (*Id.*) On October 21, 2013, Officer Schiaretti was reissued his duty weapon as well as an off-duty weapon that was also surrendered. (*Id.* at 5.)

On October 17, 2013, during a monthly Internal Affairs meeting between the Trenton Police Department and the Mercer County Prosecutor's Office, it was determined that Officer Schiaretti had approached the Mercer County Prosecutor's Office ("MCPO") with allegations that Astbury may be intending to harm himself or Officer Schiaretti. (*Id.* at 4.) In support of this accusation, Officer Schiaretti provided an audio statement as well as e-mails and text messages. (*Id.*)

At the same Internal Affairs meeting, the MCPO recommended that departmental action be taken against Astbury "out of concerns for [his] health and welfare and the safety of [Officer Schiaretti]." (*Id.*) Thereafter, Astbury was placed on restrictive duty pending the outcome of the investigation and was relieved of his department issued weapon. (*Id.*) Astbury then requested a meeting with the MCPO so that he could provide a statement. (*Id.* at 5.) On October 18, 2013,

3

Astbury met with First Assistant Prosecutor Doris Galuchie ("Galuchie"), as per Astbury's request, delivered a statement, which was transcribed. (*Id.*)

On January 1, 2014, Astbury contacted Lieutenant Thomas Murphy ("Lieutenant Murphy") of the Trenton Police Department and stated that he was en route to Robert Wood Johnson Hospital to be treated for a hand injury that was allegedly sustained in a physical altercation with Officer Schiaretti and Jamie Schiaretti. (*Id.* at 8.) Because the alleged physical altercation took place at the Schiarettis' residence in Chesterfield Township, New Jersey, Lieutenant Murphy referred the matter to the Chesterfield Police Department. (*Id.* at 8-9.) Jamie Schiaretti sustained a head injury but claimed that it was the result of an accidental fall and chose not to press any charges. (*Id.* at 9.) As a result of the January 1 incident, Officer Schiaretti was again placed on restricted duty and his weapons were again confiscated. (*Id.* at 10.)

On February 17, 2014, Jamie Schiaretti reported "ongoing harassment by [Astbury]" to the Chesterfield Police Department. (*Id.* at 13.) Specifically, Jamie Schiaretti alleged that: Astbury had made continual calls to her cell phone over the previous two months and spoke to her in an offensive manner; Astbury had shown up at her residence and place of employment, sometimes in the middle of the night, and refused to leave until she spoke to him; Astbury had continued to contact her and demand they continue their relationship even though Jamie Schiaretti has requested he stop contacting her; and Astbury had threatened to "get [Officer Schiaretti] in trouble at work" if she would not continue their relationship. (*Id.*) Accordingly, Jamie Schiaretti filed a Temporary Restraining Order against Astbury assigned under Burlington County Docket No. FV-03-1239-14 (the "First Burlington TRO"), which was granted on February 18, 2014. (*Id.*; First Burlington TRO (ECF No. 39-1, Ex. B).)

On February 18, 2014, Officer Mark Straszewski of the Hamilton Police Department

delivered the First Burlington TRO to Astbury at his residence. (ECF No. 39-9 at 14.) Under the terms of the First Burlington TRO, the Hamilton Police Department seized two long firearms and a New Jersey firearms ID card from Astbury. (*Id.*) Additionally, the Trenton Police Department placed Astbury on restricted duty. (*Id.*) On the same date, Jamie Schiaretti requested a dismissal of the First Burlington TRO, which was granted. (*Id.*)

On February 20, 2014, during the monthly internal affairs meeting between the Trenton Police Department and the MCPO, it was determined that Officer Schiaretti be returned to full duty and rearmed and that Astbury be evaluated for fitness for duty before being returned to full duty. (*Id.* at 14-15.) On February 25, 2014, Officer Schiaretti was returned to full duty and reissued his service weapon and off-duty weapon. (*Id.* at 15.) On March 4, 2014, Lieutenant Slack notified Astbury that he was ordered to report to the Institute for Forensic Psychology on March 17, 2014, for a fitness for duty examination. (*Id.*)

On March 6, 2014, Jamie Schiaretti obtained another Temporary Restraining Order against Astbury assigned under Burlington County Docket No. FV-03-1315-4 (the "Second Burlington TRO"). (*Id.* at 15; Second Burlington TRO (ECF No. 39-1, Ex. D).) Sergeant Jose Vasquez of the Hamilton Police Department delivered the Second Burlington TRO to Astbury. (ECF No. 39-9 at 15.) Both the Trenton Police Department and the MCPO were notified of the Second Burlington TRO. (*Id.*) On March 14, 2014, Jamie Schiaretti had the Second Burlington TRO dismissed. (ECF No. 39-9 at 16.)

On March 17, 2014, Astbury appeared for his fitness for duty exam before Dr. Matthew Guller of the Institute for Forensic Psychology in Oakland, New Jersey. (ECF No. 39-9 at 16.) Dr. Guller concluded that Astbury was not fit for full duty, but capable of serving in a restricted duty capacity. (*Id.*) Dr. Guller also recommended that Astbury attend a course of psychotherapy

and be referred for psychological evaluation thereafter. (*Id.*) On May 1, 2014, the Trenton Police Department was notified that Astbury was in the recommended psychotherapy course treatment with Dr. Michael Bizzarro. (*Id.*)

On June 4, 2014, the Burlington County Prosecutor's Office returned Astbury's firearms and New Jersey firearm ID card to him without restriction. (*Id.*) On June 19, 2014, Astbury was ordered to attend a second psychological fitness for duty examination at the Institute for Forensic Psychology in Oakland, New Jersey. (*Id.*) On June 26, 2014, Astbury submitted to a fitness for duty examination before Dr. Guller, who determined that Astbury was fit for duty without restriction. (ECF No. 39-9 at 17.) Thereafter, the matter was administratively closed. (*Id.*)

As a result of the seizure of his weapons, Astbury claims he had to forego opportunities for side pay. (ECF No. 1-1, ¶ 13.) The evidence in the record indicates that Astbury had an income of $108,009 in 2013, with $24,942 in side business income, and he had an income of $119,007 in 2014, with $32,056 in side business income. (Astbury 2013 Tax Returns, ECF No. 39-2, Ex. I; Astbury 2014 Tax Returns, ECF No. 39-2, Ex. J.) Astbury's income in both years was below his earned income for the years 2015 and 2016, when he earned an income of $140,718 with a side business income of $28,497 and $176,870 with a side business income of $20,784, respectively. (Astbury 2015 Tax Returns, ECF No. 39-2, Ex. K; Astbury 2016 Tax Returns, ECF No. 39-2, Ex. L.)

## III. LEGAL STANDARD

### A. Rule 12(c) Motion

"[A] motion to dismiss for failure to state a claim under Rule 12(c) is identical to one filed under Rule 12(b)(6), except that Rule 12(c) allows for the motion to be filed after the filing of an answer, while Rule 12(b)(6) allows for the motion to be made in lieu of an answer."

6

*Wellness Pub. V. Barefoot*, 2008 WL 108889, at *6 (D.N.J. Jan. 9, 2008); *see also Turbe v. Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991).

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be

pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "'document *integral to or explicitly relied upon* in the complaint . . . .'" *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

### B. Motion for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002). "Summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380 (3rd Cir. 1991) (citing *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir.), *cert. denied*, 474 U.S. 1010 (1985)); *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party bears the burden of persuasion at trial, summary judgment is appropriate only if the evidence is not susceptible to different interpretations or inferences by the trier of fact. *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of

9

the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex*, 477 U.S. at 330 (Brennan, J., dissenting). Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

## IV. DECISION

Trenton argues that it is entitled to judgment on the pleadings at the Complaint fails to state a claim because it was not the party responsible for the removal of Astbury's weapon and because no Due Process violation occurred as a hearing was not required. (ECF No. 39 at 16-26.) In the alternative, Trenton argues that summary judgment is warranted as there are no genuine issues of material fact as it did not violate Astbury's statutory or constitutional rights when it

acted in accordance with the internal affairs policies, the employee handbook, and the Attorney General Directive 2000-3 when it referred the matter to the MCPO. (ECF No. 39 at 28-31.) Astbury counters that Trenton failed to comply with constitutional and statutory protections when it disarmed him and placed him on restricted duty (ECF No. 47), and argues he is entitled to partial summary judgment pursuant to N.J. Stat. Ann. 40A:14-147, which requires "just cause" before an officer may be reduced in rank or before other adverse employment action may be taken, and because his Due Process rights were violated. (ECF No. 41-1 at 11-25). If, on a Motion to Dismiss under Rule 12(b)(6) or a Motion for Judgment on the Pleadings under Rule 12(c), materials outside the pleadings are presented and not excluded by the court, the motion may be treated as one for summary judgment on notice to the parties. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *see also Angelastro v. Prudential-Bache Secs., Inc.*, 764 F.3d 939, 944 (3d Cir. 1985). Here, as the parties have each had the opportunity to present evidence and fully brief the summary judgment motion, this Court will analyze the motions under the summary judgment standard.

Astbury is incorrect in asserting his constitutional rights were violated or that Trenton violated N.J. Stat. Ann. 40A:14-147 as Astbury had not been terminated or suspended from duty when his weapons were removed during the temporary investigation. First, Astbury provides almost no authority supporting his contention that his Due Process rights were violated. Rather, Astbury merely makes one contention asserting that he was entitled to a *Loudermill*[1] hearing, which he was not provided. (ECF No. 41-1 at 24.) However, *Loudermill* hearings are only

---

[1] In *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 545-46 (1985), the United States Supreme Court held that certain public employees have a property interest in their continued employment, and that they are entitled to a hearing, before being terminated, that need not rise to the level of a full evidentiary hearing but must provide reasonable grounds to believe the charges are true and to support the proposed action.

necessary when the public employee is terminated, which Astbury was not. *Loudermill*, 470 U.S. at 538. Moreover, "[p]roperty interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. . . .'" *Id.* (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). Here, as discussed below, Astbury has not demonstrated the violation of any rights, at state law or otherwise, that would give rise to a constitutional violation.

Second, though not applicable here, Astbury has not demonstrated a violation of N.J. Stat. Ann. 40A:14-147. N.J. Stat. Ann. 40A:14-147 states, in pertinent part:

> Except as otherwise provided by law, no permanent member or officer of the police department or force shall be removed from his office, employment or position for political reasons or for any cause other than incapacity, misconduct, or disobedience of rules and regulations established for the government of the police department and force, nor shall such member or officer be suspended, removed, fined or reduced in rank from or in office, employment, or position therein, except for just cause as hereinbefore provided and then only upon a written complaint setting forth the charge or charges against such member or officer. The complaint shall be filed in the office of the body, officer or officers having charge of the department or force wherein the complaint is made and a copy shall be served upon the member or officer so charged, with notice of a designated hearing thereon by the proper authorities, which shall be not less than 10 nor more than 30 days from the date of service of the complaint.
>
> A complaint charging a violation of the internal rules and regulations established for the conduct of a law enforcement unit shall be filed no later than the 45th day after the date on which the person filing the complaint obtained sufficient information to file the matter upon which the complaint is based . . . The law enforcement officer may waive the right to a hearing and may appeal the charges directly to any available authority specified by law or regulation, or follow any other procedure recognized by a contract, as permitted by law.

N.J. Stat. Ann. 40A:14-147

Astbury argues that he was reduced in "office, employment or position" by virtue of the confiscation of his weapon, and thus that his statutory rights under N.J. Stat. Ann. 40A:14-147 were violated.[2] (ECF No. 41-1 at 13.) The authorities Astbury cites in support of this proposition – *Perez v. Cucci*, 725 F. Supp. 209 (D.N.J. 1989) and *Richardson v. Felix*, 856 F.2d 505 (3d Cir. 1988) – are inapposite. In *Perez*, the plaintiff was demoted from detective to patrolman without any hearing, 725 F. Supp. at 243, and in *Richardson*, the plaintiff was terminated. 856 F.2d at 507. Here, by contrast, Astbury was not terminated nor reduced in rank, but merely placed on restricted duty pending the outcome of the investigation. (ECF No. 39-9 at 14.) There is absolutely no evidence in the record that Astbury's salary or rank were reduced as a result of the pending investigation. Rather, Astbury's tax returns demonstrate this his salary continued to rise even during the years he was placed on restricted duty. (*See* ECF No. 39-2, Exs. I-L.)

Contrary to Astbury's contentions, Trenton and the MCPO followed the proper procedure under New Jersey state law in removing Astbury's weapons once the allegations against him surfaced. On September 1, 2000, the New Jersey Attorney General released the "Directive Implementing Procedures for the Seizure of Weapons from Municipal and County Law Enforcement Officers Involved in Domestic Violence Incidents" (the "2000-3 Directive"). (2000-3 Directive (ECF No. 39-7).)[3]

The 2000-3 Directive first delineates the situations under which weapons are to be confiscated, stating:

---

[2] Astbury provides no other evidence that he was reduced in rank. Indeed, the evidence in record does not demonstrate that he was ever reduced in rank, but only placed on restricted duty.

[3] Pursuant to the Criminal Justice Act of 1970, N.J. Stat. Ann. 52:17B-97 to -117, the Attorney General of the State of New Jersey is charged with adopting guidelines, directives, and policies that bind local police departments in the day-to-day administration of the law enforcement process. *See Matter of Carberry*, 556 A.2d 314, 315-16 (N.J. 1989).

13

> Whenever an act of domestic violence as defined in N.J.S.A. 2C:25-19[4] has been alleged to have been committed by a law enforcement officer resulting in the seizure of the officer's weapons, *or the officer has been served with a domestic restraining order* or a domestic violence warrant for the seizure of weapons or there is a bail condition which requires the surrender of weapons, the officer must: (1) Immediately report that fact to the officer's departmental supervisor who must promptly notify the Prosecutor's Office in the county where the officer is employed. (2) Voluntarily surrender all weapons to the law enforcement officer responding to the domestic violence call or in response to a requirement in a domestic violence restraining order or a domestic violence warrant for the seizure of weapons or in a bail condition.

(ECF No. 39-7 at 2) (emphasis added).

Next, the 2000-3 Directive provides that any department issued weapons are to be returned to the custody of the department issuing such weapon and that all other weapons seized shall be promptly forwarded to the County Prosecutor's Office in the county in which the seizure took place pursuant to N.J. Stat. Ann. 2C:25-21d. (*Id.* at 3) Additionally, the 2000-3 Directive states "the County Prosecutor's Office . . . shall conduct an immediate investigation of the incident and determine whether the officer should be permitted to carry a weapon and what conditions, if any, should be recommended to the court for the return of the weapons to the law enforcement officer pending the disposition of the domestic violence proceedings." (*Id.*) Finally, the 2000-3 Directive states that when weapons are seized from a law enforcement officer involved in a domestic dispute "but no criminal charges, court order or warrant has been issued or is pending regarding possession of weapons, a County Prosecutor may authorize the return of the seized weapons subject to conditions, if any, the Prosecutor determines necessary." (*Id.* at 5.) As such, the seizure and possession of Astbury's weapons were the responsibility of the MCPO,

---

[4] N.J. Stat. Ann. 2C:25-19 states, in pertinent part: "Domestic violence" means the occurrence of one or more of the following acts inflicted upon a person protected under this act by an adult or an emancipated minor: . . . (13) Harassment N.J.S. 2C:33-4.

not Trenton. Accordingly, even if Astbury's constitutional or statutory rights had been violated as a result of the seizure of his weapons, such harm would have been caused by the MCPO and not Trenton.

Additionally, Trenton's Internal Affairs Unit's Policies and Procedures (the "IA Policy") mirrors the goals of the 2000-3 Directive. (IA Policy, ECF No. 39-4). Specifically, the IA Policy provides:

> Where preliminary investigative data indicates the possibility of a criminal act on the part of the subject officer, or in the investigation involves the use of force by the officer, which results in serious bodily injury or death, the county prosecutor shall be notified immediately. No further action should be taken, including the filing of criminal charges against the officer, until directed by the county prosecutor.

(ECF No. 39-4 at 10).

Thus, in accordance with the IA Policy and the 2000-3 Directive, the progress of the investigation and the decision as to whether, and when, to return Astbury's weapons were within the discretion of the MCPO.

The remainder of Astbury's arguments are without merit. Astbury argues that Trenton violated his Due Process rights by depriving him of "the full panoply of police powers and privileges" (ECF No. 47 at 24), and again cites only *Richardson*, 856 F.2d at 507, a matter in which an officer was terminated without being afforded adequate procedural protections. Astbury further argues that Trenton cannot justify disarming him "for his own good" (ECF No. 47 at 32), that Trenton cannot rely on alleged directives from the MCPO (*id.* at 34), that Astbury was not involved in the altercation between the Schiarettis (*id.* at 41), and that Trenton cannot rely on the domestic violence statute, N.J. Stat. Ann. 2C:25-19, to justify its confiscation of Astbury's weapons. (*Id.* at 46). These arguments are each undercut by this Court's conclusion

that Trenton, and the MCPO, acted in accordance with New Jersey state law in removing Astbury's weapons during the pendency of the investigation.

As there is no genuine issue as to any material fact, and the applicable law makes clear that Trenton is entitled to judgment as a matter of law, Trenton's Motion for Summary Judgment is **GRANTED**.

## V. CONCLUSION

For the reasons set forth above, Trenton's Motion for Summary Judgment (ECF No. 39) is **GRANTED,** Trenton's Motion for Judgment on the Pleadings (ECF No. 39) is **DENIED AS MOOT**, and Astbury's Motion for Partial Summary Judgment (ECF No. 41) is **DENIED**.

**Date:** December 30, 2018  */s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**